UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN
THIS IS A CONSENT CASE

LORNA ASH,

    Plaintiff,

v.

SAMBODROMO, LLC,

    Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Defendant, SAMBODROMO, LLC, by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56(b) and United States District Court for the Southern District of Florida Local Rule 7.5, moves this Court for entry of an order granting summary judgment on Counts I and II, and, in support thereof, state as follows:

### INTRODUCTION

This action involves claims by Plaintiff, Lorna Ash, against Defendant, Sambodromo, LLC, (hereinafter "Sambodromo" or "Defendant"), for claims of violations of the Fair Labor Standards Act ("FLSA"), arising out of Sambodromo's alleged minimum wage violations, by paying Plaintiff a reduced minimum wage, requiring Plaintiff to share a percentage of her tips, and by taking illegal tip deductions. Complaint ¶ 3, 6 (D.E. 1). Plaintiff has also alleged that her employment with Defendant was terminated as a retaliatory measure due to her alleged complaints relative to the FLSA. *Id.* at ¶¶ 18, 19. Defendant continues to deny these allegations as set forth in their Answer to Plaintiff's Complaint. Defendant's Answer ¶¶ 18-20 (D.E. 7). Defendant is a foreign limited liability corporation conducting business in Miami Beach, Florida.

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

Complaint ¶ 4 (D.E. 1). As discussed below, the law and facts gathered throughout the course of discovery demonstrate that Defendant comported with the FLSA. As such, Samboromo's Motion for Summary Judgment must be granted.

## STATEMENT OF UNDISPUTED OF FACTS

Plaintiff, Lorna Ash, was employed with the Defendant on multiple occasions from 2004 through January 4, 2009. *See* Ash Revised Answers to Interrogatories, No. 9, attached hereto as Exhibit "1." Starting in early 2004, Plaintiff was hired to work for Defendant as a hostess. *Id*. Ash voluntarily left her employment with Defendant to work for her husband between March 2004 and May 2004. *Id*. Ash eventually returned to work for Defendant later in 2004 through March 2007 wherein she worked about forty percent (40%) of her time as a hostess and sixty percent (60%) of her time as a server. *Id*; Deposition of Lorna Ash, ¶¶13-14, attached hereto as Exhibit "2." During this period, Ash took the months of June 2006 through September 2006 off to travel. Exhibit 1. In March 2007, Ash voluntarily left Sambodromo to attend school. Exhibit 1; Deposition of Ash, Exhibit 2 at ¶ 13. Plaintiff's last period of employment with Defendant as a full time server began in January 2008 until her employment was terminated on January 4, 2009. Exhibit 1.

During her multiple years of employment with Defendant, Ash states that she had made complaints from time to time regarding the tip out to the sushi chefs. *Id*. at ¶¶ 38, 65-68. Ash believes the first time she complained was at some point in 2005. *Id*. at ¶ 66. Ash last recalls making complaints about the five percent (5%) tip out to the sushi chefs to an assistant manager, Jeremy Emerson, between June and November 2008. *Id*. at ¶¶ 67-68. Ash did not complain to any member of management after that date. *Id.* at ¶ 70. However, Plaintiff contends that she was terminated due to complaints about the five percent (5%) tip out to sushi chefs. *Id*. at ¶¶ 68-70.

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

Plaintiff was terminated by the General Manager Ron Garcia, who never mentioned her complaints about the tip out during her termination. *Id*. at ¶¶ 50, 70.

Plaintiff's employment with Defendant was terminated for several reasons. Specifically, on the evening of her termination, she abandoned her station, as well as some guests that were seated at one of her tables, without permission. Deposition of Ron Garcia, attached hereto as Exhibit "4" at ¶¶ 20, 32. Mr. Garcia informed the closing servers, of which Plaintiff was one, that while they were still seating tables, one of them could be cut early, and left the decision up to the servers. *Id*. at ¶ 30. Plaintiff cut herself without consulting with the other servers and proceeded to allegedly inform one of them to pick up the table in her section. *Id*. at ¶¶ 32-33. However, the damage was already done, as the patrons sitting in Plaintiff's section were not receiving service and at that point were "very irate." *Id*. Mr. Garcia eventually provided the patrons complimentary appetizers and drinks to cover up the mess. *Id*. at ¶ 35. Also considered in the decision to terminate Ash were her several other disciplinary infractions. *Id*. at ¶ 20. Specifically, approximately two (2) weeks prior to her termination Plaintiff had received below standard points on a "Shoppers Report." *Id*. at ¶¶ 21-22. A "Shoppers Report" is where an anonymous person comes into the restaurant and provides independent feedback to the managers regarding the performance of the servers, bartenders and staff. *Id*; Deposition of Ash, Exhibit 2 at ¶¶ 54-55. Based on the foregoing, Ash was initially suspended. Deposition of Garcia, Exhibit 4, at ¶ 36; Deposition of Ash, Exhibit 2 at ¶ 51. However, when Ash pushed the issue of her suspension further with Mr. Garcia, she was terminated. Deposition of Garcia, Exhibit 4, at ¶ 37; Deposition of Ash, Exhibit 2 at ¶ 55.

One of Plaintiff's allegations in this case relates to deductions taken from tips paid by credit cards. Deposition of Ash, Exhibit 2 at ¶ 86. Ash states that she believes the percentage

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

deducted from each tipped credit card was three percent (3%), although it varied from credit card to credit card. Deposition of Ash, Exhibit 2 at ¶¶ 82-83, 86. The actual percentage deducted from each employee's tips paid by credit card amounted to two-point three percent (2.3%). Affidavit of Patricia Gonzales, attached hereto as Exhibit "7." Each credit card company accepted by Sambodromo, namely, American Express, Visa and MasterCard, charge a different transaction fee based upon the agreement between Sambodromo and the card company. *Id*. The average credit card transaction fee for all relevant time periods in this matter was two-point three percent (2.3%), which is also the amount deducted from tips paid by credit card. *Id*.

## **LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT**

Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also In re Royal Caribbean Cruises Ltd. v. Royal Caribbean Cruises, Ltd.*, 55 F. Supp.2d 1367, 1369 (S.D. Fla. 1999). The non-moving party must conclusively show the absence of any genuine issues of material fact, and the court must draw every possible inference in favor of the non-moving party. Fed. R. Civ. P. 56(c); *see also In re Royal Caribbean Cruises Ltd.,* 55 F. Supp. at 1369. The moving party is entitled to summary judgment, as a matter of law, when the non-moving party fails to show the existence of genuine issues of material fact. Fed. R. Civ. P. 56(c); *see also In re Royal Caribbean Cruises Ltd.,* 55 F. Supp. 2d at 1369. Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

In the instant case, no material facts are in dispute. Taking every possible inference in favor of Plaintiff, Defendant is entitled to final summary judgment as a matter of law based upon the record evidence in this case and the substantive case authority cited herein. Based upon all evidence provided thus far, Plaintiff has not and cannot establish that the Defendant violated any provision of the FLSA. Further, Plaintiff cannot establish that she was retaliated against for any alleged complaints regarding the FLSA. Accordingly, Defendants is entitled to final summary judgment relief as a matter of law.

## MEMORANDUM OF LAW

**A.     Defendant's Payment of Reduced Minimum Wage is Valid as a Matter of Law**

Plaintiff first alleges in Count I of her Complaint that Defendant Sambodromo violated the FLSA by paying her less than the applicable minimum wage. Complaint ¶¶ 3, 11 (D.E. 1). However, Plaintiff also recognizes that Defendant is entitled to pay a reduced minimum wage to tipped employees. *Id.* ¶ 13. It is well established that under federal law, an employer can pay employees in a tipped position a reduced minimum wage. 29 U.S.C § 203(m). In particular, an employer can pay a reduced wage so long as the difference is made up in tips. The difference is referred to as the "tip credit," created by 29 U.S.C. § 203(m), which "allows employers to use a portion of the employee's tip income to supplement its minimum wage obligations to the employee, so long as the combined wage and tip income meets or exceeds the minimum wage." *Davis v. B&S, Inc.*, 38 F.Supp.2d 707, 711 (N.D. Ind. 1998). The relevant language of section 203(m) provides that in order for an employer to use the tip credit it must pay the employee **at least the minimum wage**, when direct wages and the tip credit are combined. 29 U.S.C § 203(m); *See also* DOL Wage and Hour Fact Sheet # 15, attached hereto as Exhibit "11." An employees' reduced minimum wage plus tips must, at a minimum, equal the applicable

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

minimum hourly wage. *Id*. Nothing in the FLSA prevents an employer from paying an employee more. Here, the Plaintiff does not dispute that her reduced tip-credit wage plus her tips equaled at least the minimum wage. Rather, Plaintiff alleges that Defendant's requirement for her to perform non-tipped work at the reduced hourly wage is in violation of the act. Complaint at ¶ 3 (D.E. 1). Specifically, Plaintiff alleges that she is entitled to "no less than the minimum wage while [she is] doing non-tipped work and/or in training." Complaint at ¶ 13 (D.E. 1).

    1.    <u>Reduced Minimum Wage for "Side Work" is Valid under the FLSA</u>

It well established that the FLSA allows for the tip credit being applied to time spent on duties related to the tipped occupation, "even though such duties are not by themselves directed toward producing tips." DOL Field Operations Handbook, June 30, 2000, ¶ 30(d)(0)(0)(e), attached hereto as Exhibit "3"; 29 C.F.R. § 531.56, (e). Such activities may include a waiter or waitress spending time cleaning and setting tables. *Id*. "Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." 29 C.F.R. § 531.56(e).

In this manner, Plaintiff was required to do "side work" which varied depending on multiple factors, including table sections and shift time. Deposition of Ash, Exhibit 2 ¶ 44-47. Opening and closing side work could take as little as ten (10) minutes and no more than thirty (30) to forty-five (45) minutes, during which time each employee is still "on the clock." *Id*. Side duties include cleaning the work station, cleaning buckets, folding napkins and placing menus at the host stand, all of which are incidental to a servers work. *Id*. at ¶ 46-47. Plaintiff admitted in her deposition that such work was incidental to her duties as a server. *Id.* Additionally, while severs are finishing up their side work they generally will already have tables with customers or begin receiving tables with customers. Deposition of Ron Garcia, attached hereto as Exhibit "4"

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

at ¶ 28. The servers will attend to their tables and continue to finish up their side work in between. *Id*. Based on the foregoing, Plaintiff's incidental side work, wherein she is paid a reduced minimum while engaged in a tipped occupation, is valid as a matter of law.

    2.    <u>Plaintiff was paid the Applicable Minimum Wage during Training</u>

As stated above, Plaintiff alleges that she was required to attend training, wherein she was improperly paid the reduced hourly wage. Complaint at ¶¶ 3(c), 13 (D.E. 1). However, the undisputed facts reflect otherwise. Plaintiff by her own admission states that while she does not specifically recall what she was paid during training, it was not the reduced minimum wage. Deposition of Ash, Exhibit 2 at ¶ 30. Defendant's general manager, Ron Garcia testified during his deposition that during training all servers are paid the minimum wage. Deposition of Garcia, Exhibit 4 at ¶ 9. This is also reflected in Plaintiff's payroll records, attached hereto as Exhibit "9" and Exhibit "10." Plaintiff has not produced any information in the record to dispute Mr. Garcia's testimony. As such, it is undisputed that Plaintiff was properly paid the full minimum wage during training.

**B.**    **Tipping Pools are Valid as a Matter of Law**

Plaintiff alleges that Defendant required her to share her tips with non-tipped employees and/or employees who were then performing non-tipped work. Complaint ¶ 12 (D.E.1). Specifically, Plaintiff alleges that Defendant's policy of requiring a five percent (5%) tip out to the sushi chefs violates the FLSA. Deposition of Ash, Exhibit 2 at ¶¶ 68-69, 86. Further, Plaintiff alleges that Defendant's policy of taking three percent (3%) from tips as credit card processing fees also violates the FLSA. *Id*. at ¶ 86. As discussed in more detail below, Defendant's tip out policy is valid as a matter of law and Defendant is thus entitled to summary judgment as a matter of law.

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

Generally, tip-pooling arrangements are allowed under the FLSA. *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 303-304 (6th Cir. 1998)(*citing* 29 C.F.R. § 531.54; *Dole v. Cont'l Cuisine, Inc.*, 751 F.Supp. 799, 801 (E.D. Ark. 1990); *Bonham v. Cooper Cellar Corp.*, 476 F.Supp. 98, 102 (E.D. Tenn. 1979; DOL Field Operations Handbook § 30d04(b)). "Department of Labor regulations and court decisions interpreting subsection, 203(m) of the FLSA recognize that mandatory tip-out provisions are permissible forms of tip sharing." *Kilgore,* 160 F.3d at 303-304. Moreover, section 203(m) expressly permits the "pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. §203(m). Where an employee participating in a tipping pool satisfies the requirements of subsection 203(t), the requirements for a valid tipping pool are also met. *Kilgore,* 160 F.2d at 301. Moreover, <u>merely because the tipping pool includes some employees who receive money from the pool without contributing to it is not per se invalid</u>. *Lentz v. Spanky's Restaurant II*, *Inc.*, 491 F.Supp.2d 663, 671 (N.D.Tx. 2007)(emphasis added); 29 C.F.R. § 531.54 (noting tip pools may include employees such as busboys).

As discussed in more detail below, because the sushi chef's fall within the requirements of section 203(t), the tipping pool is thus valid.

1. <u>Sushi Chefs' Participation in the Tip-Pool is Valid</u>

The FLSA defines a "tipped employee" to be one engaged in an occupation in which they customarily and regularly receive more than thirty dollars ($30.00) per month in tips. 29. U.S.C. § 203(t). Generally, chefs are not customarily considered tipped employees under the FLSA. *See Roussell v. Brinker Inter., Inc.*, 2008 WL 2714079, *6-7 (S.D.Tx. July 9, 2008)(quoting S. Rep. 93-690, at 43 (Feb. 22, 1974)). Here, Plaintiff contends that the Sushi Chefs are not tipped employees and thus the five percent (5%) tip-out as part of the tipping pool was invalid.

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

When confronted with the issue of whether a particular employee or group/class of employees fall under the definition of a "tipped employee" under the FLSA, courts will generally focus their analysis on the level of customer interaction the specific employees in question have with customers "as opposed to the amount of interaction experienced by the occupation as a whole." *Wajcman v. Investment Corp. of Palm Beach*, 2009 WL 46507, *3, (S.D. Fla. February 23, 2009)(unpublished)(stating that this also applies in deciding Defendant's summary judgment motion)(citing *Wajcman v. Investment Corp. of Palm Beach*, 2008 WL 783741, *3 (S.D. Fla. March 20, 2008)("'the focus is properly drawn to the questions of whether *the employee* performs important customer service'")(emphasis added); *Morgan v. SpeakEasy, LLC*, 2007 WL 2757170, *18 (N.D.Ill. September 20, 2007)("court evaluated the customer related activities of the two employees that plaintiffs claimed were improperly included in tip pool and concluded that both had 'sufficient customer interaction' to be included in the tip pool.").

Moreover, it has been recognized that service employees are entitled to share in a tipping pool arrangement, even where certain employees were not the ones to wait on the tipping patron, as restaurants should be allowed to implement wide spread practices to ensure that all service employees share in gratuities. *Louie v. McCormick & Schmick Restaurant Corp.*, 460 F.Supp.2d. 1153. 1160-63 (C.D.Cal. 2006); *Dole*, 751 F.Supp. at 801-803 (upholding a tip pool where in certain employees derived their tip income solely from the tip pool). In other words, tip pools are valid even where certain employees derive income from the tip pool without contributing to it. Additionally, a tip pool is not invalidated merely because an employee receives more than the minimum wage.[1] *See e.g. Platek v. Duquesne Club*, 961 F.Supp. 835, 838 (W.D.Pa. 1995) (recognizing the validity of a tip-pool where employees received more than the minimum wage).

---

1 *See supra* p. 5, discussing the requirement for an employer to use the "tip credit" in paying a reduced minimum wage and stating that the employee's reduced wage plus tipped wage must equal **at least** the applicable minimum wage standards; however, there is nothing preventing an employee from earning more than the minimum wage.

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

Because determining who is a "tipped employee" requires the analysis from the customer's prospective, one must "consider whether the worker in question is one whom the customer would normally anticipate sharing in the gratuity. *Wajcman*, 2009 WL 465071 at *4 (Citing *Kilgore*, 160 F.3d at 300-02). In *Kilgore* the court found that hosts were "engaged in an occupation in which they customarily and regularly receive tips because they sufficiently interact with customers in an industry (restaurant) where undesignated tips are common." *Kilgore*, 160 F.3d at 301. Restaurant employees who have more than a de minimus interaction with customers are considered tipped employees. *Id*. The Department of Labor, Wage and Hour Division specifically concluded in a December 19, 2008 Opinion Letter that sushi chefs are similar to counter persons, where they prepare sushi at the sushi bar in front of customers, and thus can share in tip pools. See December 19, 2008 Opinion Letter from the Wage and Hour Division, attached hereto as Exhibit "5."

Likewise, in this matter, the sushi chefs who participate in the tipping pool have contact with the guests as the sushi bar, as it is located in the center of the dining area. See Deposition of Ash, Exhibit 2 at ¶ 75; Deposition of Garcia, Exhibit 4 at ¶¶ 39-40; Photograph of Sushi Bar at Sushi Samba in Miami Beach, attached hereto as Exhibit "6," available at http://www.sushisamba.com/index.cfm/id/7/Id2/16/imageId/22.html. Customers can "sit at the bar in the same fashion that you would a typical sushi restaurant, but the orders are not taken by the sushi chefs, but by the servers." Deposition of Garcia, Exhibit 4 at ¶ 40; Deposition of Ash, Exhibit 2 at ¶ 70. Defendant considers the sushi chefs part of the support staff, similar to busboys, who while having interactions with customers, do not generally receive a direct tip from a customer. *Id*. However, as stated above busboys are considered employees who customarily and regularly receive tips, and sushi chefs may be likewise considered. *Lentz*, 491

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

F.Supp.2d at 671. Thus, sushi chefs are valid members of the tipping pool and Defendant's Motion for Summary Judgment at to Count I should be granted.

2.  Defendant's deduction for credit card processing fee is valid

Plaintiff has also challenged the validity of Defendant's alleged three percent (3%) deduction for tips paid by credit card. Deposition of Ash, Exhibit 2 at ¶¶ 81-82, 86; Complaint at ¶ 16 (D.E. 1). However, as reflected by the undisputed facts in this matter, the credit card deduction is reasonable and valid as a matter of law. In *Meyers v. Copper Cellar Corp.*, 192 F.3d 546, 552 (6th Cir. 1999), the plaintiffs had challenged the validity of their employer's tip credit based upon a deduction of three percent (3%) from each employees' gratuity as a service charge where a customer had paid via credit card of similar instrument. Deposition of Ash, Exhibit 2 at ¶¶ 81-82, 86.

The court held that "as a matter of law, an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering its section 203(m) partial set-off against minimum wages." *Id.* at 553. The court further found where an employee's tip must first be converted into cash, that employee is not entitled to more than what they earned. *Id.* Moreover, "[n]othing in the FLSA evidences a Congressional intent to compel employers to contribute anything to any customers tip, **including any funds required to 'cash out' a charged tip for the benefit of the employees."** *Id.* at 554 (emphasis added)(citing 29 C.F.R. § 531.52 (defining "tip" as money gifted by a customer in recognition of service which is received by the employee free of any control by the employer); 29 C.F.R. § 531.53 (identifying that tips may include "amounts transferred by the employer to the employee pursuant to directions from credit customers who designate amounts to be added to their bills as tips."). "[I]t is clear that a charged gratuity

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

becomes a 'tip' only after the employer has liquidated it and transferred the proceeds to the tipped employee." *Id*.

In *Meyers*, the employer had instituted a composite deduction percentage from its employees' charged tips, although depending on the credit card used and other variables, the rate charged by the credit card company varied, sometimes exceeding the three percent (3%) deduction and sometimes being a little lower. *Id*. at 552-53, n. 13. In holding that the deduction was valid the court deduced that

> an employer may… withhold a standard composite percentage from each credit card tips, even if, as a consequence, some deductions will exceed the expense actually incurred in collecting the subject gratuity… [so long as the] total deductions from employees' tip incomes [does] not enrich it, but instead, at most, merely restore[] it to the approximate financial posture it would have occupied if it had not undertaken to collect credit card tips for its employees…."

*Id*. at 554-55 (citing *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (6th Cir. 1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit."); *See also* DOL Wage and Hour Division, January 13, 2006 Opinion letter, attached hereto as Exhibit "8" (recognizing the courts decision in *Myers v. Copper Cellar*, stating that "the Wage and Hour Division does not question the practice whereby the employer reduces the amount of credit card tips paid to the employees by an amount no greater than the amount charged to the employer by the credit card company."); Exhibit 3, DOL June 30, 2000 Field Operation Handbook ¶ 30(d)(05)(a)(stating that the Wage Hour Division "will not question the reduction of the credit card tips paid over to the employee if the amount deducted is no greater than the percentage charged by the credit card company;" and using as an example a five percent (5%) charge, thus requiring the employer to pay the employee ninety-five percent (95%) of the tips).

In the matter *sub judice*, Sambodromo charged its employees a deduction from an

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

employee's tip in order to cover the transaction charges from the credit card companies. Exhibit 7; Deposition of Ash, Exhibit 2 at ¶¶ 81-82. Instead of charging a composite percentage, Samboromo's deductions are dependent on the specific credit card used. *Id*; Deposition of Ash, Exhibit 2 at ¶ 83. Specifically, for all tips charged with American Express a three percent (3%) is deducted and for all tips charged on either Visa or MasterCard a one-point sixty-six percent (1.66%) fee is deducted. *Id*. A composite deduction from these two percentages would equate to a two-point three percent (2.3%) composite deduction for all credit card tips. *Id*. The transaction fee charged to Sambodromo varies based upon the each credit card company. *Id*. During the relevant period, the aggregate transaction fee cost was two-point three percent (2.3%), which is an average of the two-point eighty-nine percent (2.89%) charged by American Express and the one-point seventy-six percent (1.76%) charged by Visa/MasterCard.[2]  The two-point three percent (2.3%) charged is *the same* percentage Defendant deducted from Plaintiff's credit card tips. *Id*. Defendant did not place itself in any better position by deducting three percent (3%) and one-point sixty-six (1.66%) from its employee's tip income. Moreover, Defendant never charged its employees for situations where customers walked out on their bill, if something breaks, or if a credit card later comes back as being bad. Deposition of Garcia, Exhibit 4 at ¶ 18, 19; Exhibit 3, DOL June 30, 2000 Field Operation Handbook ¶ 30(d)(05)(a). Therefore, based upon the undisputed facts in this matter, Defendant's credit card tip deduction is valid as a matter of law and is entitled to summary judgment.

D.      **Retaliation Claim**

In order to state a claim for retaliation under the FLSA a plaintiff must establish that: (1) she engaged in a protected activity under the FLSA; (2) she subsequently suffered adverse action

---

[2] Note the one one-point seventy-six percent (1.76%) is the average fee taken by Visa/MasterCard. *See* Exhibit 7.

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

by the employer; and (3) a causal connection existed between the plaintiff's protected activity and the adverse action. *Wolf v. Coca-Cola*, 200 F.2d 1337, 1342-1343 (11th Cir. 2000)(citing *Richmond v. ONEOK, Inc.*, 120 F.3d. 205, 208-09 (10th Cir. 1997).

    1.    <u>Ash Did Not and was not Engaged in Any Protected Activity</u>

While it is not required that either a written or oral complaint specifically cite to the FLSA by name, not all abstract grumblings will suffice to constitute the filing of a complaint with one's employer. *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004; *EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir. 1992); *Hernandez v. City Wide Insulation of Madison, Inc.*, 508 F. Supp.2d 282 (E.D. Wis. 2007). Moreover, it is insufficient for an employee to merely complain in a general manner about wages and tips under the FLSA. *See*, *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999)(stating that "not all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of §215(a)(3)"); *See also*, *Valerio v. Putnam Assoc., Inc.*, 173 F.3d 35, 43 (1st Cir. 1999)(stating "[t]here is a point at which an employee's concerns and comments are too generalized and informal to constitute 'complaints' that are 'filed' with an employer within the meaning of the [statute]…. "); *Robinson v. Wal-Mart Stores, Inc.*, 341 F.Supp.2d 759 (W.D. Mich. 2004)("[P]laintiff's expressions of concern or discomfort or frustration over her employer's wage and work hour reporting practices – even accepting her deposition testimony as true – do not amount to requisite adversarial assertion of statutory rights"); *Brown v. Triton Sec.*, 5005 WL 2708914 (E.D. Va. 2005)("In lodging such complaints, Brown merely expressed his dissatisfaction with the terms of his employment-at-will status. Such complaints are not protected activity.")

A complaint must relate to the FLSA, if not by name then by reference to something

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

regulated by the FLSA – minimum wage, equal pay, tips. *See Moore*, 355 F.3d 562; *Ackerley*, 180 F.3d at 1007-08; *EEOC v. White & Son Enter.*, 881 F.2d 1006, 1008 (11th Cir. 1989); *Brennan v. Maxey's Yamaha*, 513 F.2d 179, 181 (8th Cir. 1975). It is imperative for the employee to communicate sufficient information to indicate that the employee's complaint is that the employer is engaging in conduct that is in violation of the FLSA. *See e.g.*, *Hardwick v. Complete Skycap Services, Inc.*, 247 Fed.Appx. 42, 2007 WL 2050867, (9th Cir. July 11, 1997)(unpublished); *See also*, *Pellon v. Business Representation International, Inc.*, 528 F.Supp.2d 1306, 1310-11 (S.D. Fla. 2007)(incorporating the 9th Cir. holding in *Hardwick*).

In *Hardwick*, the court held that the plaintiff failed to make a case for retaliatory discharge under the FLSA, when the evidence presented "at best only suggest[ed] that [the plaintiffs] generally complain[ed] about their salaries or tipping allocation system-not that [Defendant] had violated the law in any way." *Hardwick* at *44, **1. Likewise, here, Ash, while working as a server in 2005, believes she made a complaint to a manager and perhaps restaurant staff that that she thought that the servers didn't have to pay the tip for the sushi chefs because she "heard" they were paid more than the hourly minimum wage, however she wasn't certain. Deposition of Ash, Exhibit 2 at ¶ 66. Ash subsequently left Sambodromo in 2007 and then returned in March of 20008. *Id*. at ¶¶ 13, 25. Ash last recalled making a complaint to an assistant manager about the five percent (5%) to the sushi chefs at some time between June and November 2008. *Id*. at ¶¶ 67-68. Ash alleges that the assistant manager told her to write something down, which she never did. *Id*. at ¶¶ 67-69.

Ash never directly complained that Defendant was violating the FLSA. Nor did she ever say anything that could reasonably be construed as a complaint that Defendant was violating the FLSA. In fact, the FLSA violation that Ash asserts in Count I of the Complaint – that Defendant

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

was requiring her to share here tips with non-tipped employees was a non-issue for Ash. In fact Ash's complaint was relative to the *amount* being given to the sushi chefs and not the fact that the sushi chefs were being tipped in and of itself. *Id*. at ¶ 67. These de-minimus complaints which Ash barely recalls making, that she felt the amount being given to the sushi chefs was too high, does not amount to the requisite assertion of statutory rights under the FLSA. *See Robinson*, 341 F.Supp.2d at 759; *Valerio v. Putnam Assoc., Inc.*, 173 F/3d 35, 43 (1st Cir. 1999). Accordingly, Defendant is entitled to summary judgment on Count II of the Complaint.

  2. <u>Ash Cannot Demonstrate a Causal Connection between her Complaint and her Termination</u>

Even assuming *arguendo* that Ash engaged in a protected activity, she cannot and has not established a causal connection between her alleged protected activity and her termination. The undisputed evidence demonstrates that on or about January 3, 2009, Ash was terminated based upon sub par marks on a "Shoppers Report" and the abandonment of her station and a table with customers. Deposition of Garcia, Exhibit 4 at ¶¶ 20-22; Deposition of Ash, Exhibit 2 at ¶¶ 54-55. Ash was never told that she was being terminated due to her complaints relative to the tip out to the sushi chefs. Deposition of Ash, Exhibit 2 at ¶ 70. In fact, Ash was initially suspended as a result of the table abandonment, and when she returned to check her schedule, after seeing she was not on it, she pushed the issue of her suspension further, which lead to her termination. Deposition of Ron Garcia, Exhibit 4 at ¶¶ 36-37. It is Plaintiff's recollection that she was never specifically told she was terminated; rather, she recalls she was told by Mr. Garcia that she was not needed the following day, to which she responded "I guess I'm terminated." Deposition of Ash, Exhibit 2 at ¶ 55. According to the Plaintiff, she never received a response to her statement, she clocked out and left. *Id*. While Mr. Garcia recalls terminating her at that time, even viewing the testimony in the light most favorable to the Plaintiff, and assuming her testimony is correct,

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

she voluntarily resigned. Deposition of Ron Garcia, Exhibit 4 at ¶¶ 36-37. Summary judgment must be granted as there is no connection between the Plaintiffs's alleged complaint and her termination (or voluntary resignation).

Additionally, Plaintiff was employed by Sambodromo for multiple periods of time between 2004 and 2009. Exhibit 1. Plaintiff first recalls complaining to a manager about paying a tip out to the sushi chefs in 2005. Deposition of Ash, Exhibit 2 at ¶ 66. From the time Plaintiff allegedly first complained in 2005, she continued to work for the Defendant until June 2006. Exhibit 1. Plaintiff returned to work for Defendant again in September 2006 until she voluntarily left in March 2007. *Id*; Deposition of Ash, Exhibit 2 at ¶ 13. Plaintiff was last hired by Ron Garcia in March 2008. Deposition of Ash, Exhibit 2 at ¶ 25. Assuming her testimony is true, that she did in fact first complain in 2005, it seems inconsistent and illogical that Defendant retaliated against her for the reason alleged, when she was *rehired on two separate occasions* following the date she allegedly first complained. This would further support Defendant's position that there is no connection between the Plaintiff's alleged complaint and her termination, and as such, summary judgment must be granted.

Nevertheless, there is also a complete lack of temporal proximity between Ash's alleged complaints and her termination. Ash, according to her own testimony, allegedly last complained about her pay or Defendant's tip out policy at some time between June 2008 and November 2008, approximately three to seven months prior to her termination. Deposition of Ash, Exhibit 2 at ¶¶ 68, 70. Ash never complained to any member of management or a manager after that date. *Id*. at ¶ 70. However, Ash believes that her complaints were the reason for her termination. *Id*. Ash's mere speculation that her complaints - three to seven months prior to her termination - which were not even mentioned during the meeting leading up to her termination, are insufficient

1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR  - WEST PALM BEACH, FLORIDA  - (561) 383-9200 - (561) 683-8977 FAX
-17-

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

to raise a genuine issue of material fact for purposes of summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)(noting that speculation or conjecture from a party cannot create a genuine issue of material fact).

A causal connection can additionally be shown vis-à-vis a showing of close temporal proximity between the protected activity and the adverse employment action. *See Brungart v. Bell South Telecomm., Inc.*, 231 F.3d 791, 798-99 (11th Cir. 2000). However, a mere showing of temporal proximity, without more, must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Where there is a gap of three to four months between the statutorily protected expression and the adverse employment action, temporal proximity is not enough. *Id*. (citing *Richmond*, 120 F.3d at 209; *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cit. 1992)); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). As stated above, Plaintiff was terminated on January 3, 2009. Deposition of Garcia, Exhibit 4 at ¶¶ 20-22; Deposition of Ash, Exhibit 2 at ¶¶ 54-55. Despite Plaintiff contention that she was terminated due to complaints related to Defendant's tip-pool, she has been unable to recall when she last made a complaint. Plaintiff has in fact merely provided a six (6) to seven (7) month period of time that she believes she last made a complaint, which was at least three months from the date of termination. Deposition of Ash, Exhibit 2 at ¶¶ 67-68. The undisputed facts show that Plaintiff cannot establish a temporal proximity between her alleged last complaint and the termination of her employment. Based upon the foregoing, Plaintiff is unable to prove that her termination was related to her alleged protected expression; therefore, Defendant is entitled to summary judgment as to Count II as a matter of law.

## CONCLUSION

Based upon the foregoing, Defendant's tip pool policy wherein Sushi Chefs receive a

CASE NO.  09-20406-CIV-HUCK/O'SULLIVAN

percentage of the tips earned is valid as a matter of law; Defendant's deduction for tips paid by credit cards is valid as a matter of law; Defendant properly paid the Plaintiff a reduced minimum wage for all tipped and incidental and related work; Defendant properly paid Plaintiff the applicable minimum wage for time spent training; Plaintiff was terminated for legitimate non-retaliatory reasons; and Plaintiff has not and cannot establish that she was terminated for retaliatory reasons as she was not engaged in a protected activity and even if she was, *arguendo*, she cannot prove temporal proximity. Therefore, Defendant is entitled to judgment as a matter of law.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will in turn, send a notice of electronic filing to Lawrence J. McGuinness, Esq., 5805 Blue Lagoon, Dr., Suite 145, Miami, Florida 33126, this 23rd  day of September, 2009.

```
                              COLE, SCOTT & KISSANE, P.A.
                              Attorneys for Defendant(s)
                              1645 Palm Beach Lakes Blvd., 2nd Floor
                              West Palm Beach, Florida 33401
                              E-Mail: postman@csklegal.com
                              Telephone: (561) 383-9234
                              Facsimile: (561) 683-8977


                       By:    s/Barry A. Postman
                              FBN: 991856
                              JANA M. LEICHTER
                              FBN: 803901
```

L:\1085-0057-00\P\Final MSJ.DOC