UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20406-CIV-HUCK/O'SULLIVAN

MIAMI DIVISION

LORNA ASH,

       Plaintiff,

v.

SAMBODROMO,

       Defendant.

_____/

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     Plaintiff, LORNA ASH, by and through the undersigned counsel, pursuant to Rules 7.1 and 7.5, S.D. Fla. L.R., hereby files her Response, Memorandum of Law, and Exhibits in Opposition to Defendant's Motion for Summary Judgment, and in support thereof states as follows:

### Factual Overview

    1.    Plaintiff, Lorna Ash, was employed with the Defendant on multiple occasions from 2004 through January 4, 2009. (Plaintiff's Revised Answers to Interrogatories, No. 9, attached as Defendant's Exhibit "1" to its Motion for Summary Judgment).

    2.    Starting in early 2004, Plaintiff was hired to work for Defendant as a hostess. (*Id.*). Ash voluntarily left her employment with Defendant to work for her husband between March 2004 and May 2004. (*Id.*).

3.     Ash eventually returned to work for Defendant later in 2004 through March 2007 wherein she worked as a hostess and a server. (*Id.*; Deposition of Plaintiff, p. 14:4-7, attached as Defendant's Exhibit "2" to its Motion for Summary Judgment).

4.     Plaintiff's last period of employment with Defendant as a full time server began in January 2008 until her employment was terminated on January 4, 2009. (Defendant's Exhibit 1).

5.     During the multiple periods of employment, Plaintiff was required to share 5% of her received tips with the sushi chefs. (Deposition of Ron Garcia, p. 38:13-17, attached as Defendant's Exhibit "4" to its Motion for Summary Judgment).

6.     Sushi chefs do not receive any tips directly from customers. (*Id.*, p. 39:20-24, 40:8-10). Sushi chefs do not take orders directly from customers. (*Id.*, p. 40:4-6). Sushi chefs to not have to tip out anybody. (*Id.*, p. 40:11-16).

7.     Sushi chefs do not have any direct contact with the customers, they do not take customers orders, they have no tip jar or other means of receiving direct tips from customers. (Sworn Statement of Plaintiff, ¶¶8-13, attached as Plaintiff's Exhibit "A;" Sworn Statement of Dean Mitchell, ¶4, attached as Plaintiff's Exhibit "B").

8.     Defendant also discounted a 3% tip charge from Plaintiff to pay for credit card charges. (Defendant's Exhibit 2, 78:22-79:1).

9.     Defendant is reimbursed by the credit card companies the full amount of the discount, yet Defendant gives no part of that refund to the servers. (Plaintiff's Exhibit B, ¶3).

10.    Plaintiff complained to management about the deductions for credit card charges and the tip-out to the sushi chefs. (Plaintiff's Exhibit A, ¶15;).

- 2 -

11.   Plaintiff was terminated due to complaints about the five percent (5%) tip out to the sushi chefs and the credit card charges. (Defendant's Exhibit 2, ¶¶65:13-16; Plaintiff's Exhibit A, ¶16).

12.   Defendant required Plaintiff to attend beverage and food classes approximately once every two months, lasting from one to two and one half hours, for which Plaintiff was not paid. (Defendant's Exhibit 2, pp. 62:1-20, 63:13-14, 63:24-64:10).

13.   Plaintiff was terminated by the General Manager Ron Garcia.  (*Id.*, p. 50:6-9; Plaintiff's Exhibit A, ¶19).

14.   Defendant proffered reason for terminating Plaintiff was that two weeks prior to Plaintiff's termination, she abandoned her station, as well as some guests that were seated at one of her tables, without permission. (Defendant's Exhibit "4" at ¶¶20, 32).

15.   However, Ron Garcia specifically instructed the servers, including Plaintiff, to decide who would take the table that had been seated. (Defendant's Exhibit 2, p. 86:16-25; Defendant's Exhibit 4, p. 30:2-24, Plaintiff's Exhibit A, ¶ 21).

16.   Plaintiff and the other servers decided that Christina would be the one to take the table. (Defendant's Exhibit 2, p. 87:3-23; Plaintiff's Exhibit A, ¶22).

17.   When Christina was confronted by Ron Garcia about the customers not being served, Christina blamed Plaintiff for it. (Plaintiff's Exhibit A, ¶23).

18.   Instead of investigating the situation by interviewing all the servers involved, Ron Garcia accused Plaintiff of having abandoned one of her tables. (Defendant's Exhibit 2, pp. 88:15-89:16).

19.     Defendant claims that another reason for terminating Plaintiff was that Plaintiff received a below standard points on a "Shoppers Report." (Defendant's Exhibit 4, ¶¶21:15-22:6).

20.     Plaintiff was never suspended as a result of this incident. (Plaintiff's Exhibit A, ¶27).

21.     This incident occurred prior to Plaintiff's last complaint to Jeremy Emerson regarding the tip deductions for the sushi chefs and credit cards, yet Defendant only brought it up on the day when Plaintiff was terminated. (*Id.*, ¶26).

## LEGAL ARGUMENT

### The Defendant's Motion for Summary Judgment Should be Denied

Fed. R. Civ. P. 56(c) authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1896). A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Id.* In deciding a motion for summary judgment, a court's focus is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 252; *see also Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, it shifts to the party opposing the motion to

go beyond the pleadings and designate "specific facts showing that there is genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *see also Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Thus, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Id.* at 249.

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-movant. *Denney*, 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determination, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

The instant case raises numerous facts which support Plaintiff's claim that Defendant required her to share a percentage of her tips with non-tipped employees, that Defendant took illegal tip deductions from Plaintiff, and that Defendant discriminated and/or retaliated against her on the basis of Plaintiff's complaints that Defendant was violating the Federal Labor Standards Act (the Act). Thus, Defendant's Motion for Summary Judgment should be denied.

### 1. Plaintiff was not Paid the Minimum Wage During Food and Beverage Training.

Plaintiff is owed for attending mandatory training sessions that were not paid by Defendant. Defendant argues that Plaintiff admitted in her deposition that she was paid at least minimum wage for all the training that she was required to undergo, and therefore summary judgment is proper. Defendant is misinterpreting Plaintiff's testimony.

In her deposition, Plaintiff testified that she underwent training to be a server, which lasted approximately five days. (Defendant's Exhibit 2, p. 29:9-12, 30:3-8). In addition to this training, Plaintiff was required to attend beverage and food classes approximately once every two months, lasting from one to two and one half hours, for which Plaintiff was not paid at all. (Defendant's Exhibit 2, pp. 62:1-20, 63:13-14, 63:24-64:10). This training was mandatory. (Plaintiff's Exhibit A, ¶6).

The Fair Labor Standards Act (the Act) was enacted to regulate the hours and wages of employees engaged in commerce or in the production of goods for commerce, in order to protect certain persons from substandard wages and excessive hours. Employees in the United States are required to pay employees minimum wage and overtime for hours actually worked. 29 U.S.C. §206(a)(1).

Generally, courts have construed "work" to mean all activities "controlled or required by the employer and pursued necessarily and primarily for the benefit of his employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda*, 321 U.S. 590, 598 (1944). Whether an off-duty activity is conducted predominantly for the benefit of the employer depends on the degree to which an employee's freedom is undermined by the work-related activity. *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 810 (11th Cir. 1992).

With regard to attending training and other similar activities, 29 C.F.R. §785.27 provides that they need not be counted as working time so long as the following criteria is met:

(a) Attendance is outside of the employee's regular working hours;

(b) Attendance is in fact voluntary;

(c) The course, lecture, or meeting is not directly related to the employee's job; and

(d) The employee does not perform any productive work during such attendance.

- 6 -

*Dade County, Fla. V. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997).

In the instant case, Plaintiff was required to attend mandatory training sessions, once every two months. All those sessions pertained to food and beverage, which are directly related to Plaintiff's job as a server. Therefore, Plaintiff is entitled to be paid at least the minimum wage for the time spent during all the food and beverage training session she attended throughout her employment with Defendant, and as such Defendant's motion for summary judgment on this issue should be denied.

### 2. Plaintiff was Required to Share her Tips with Non-Tipped Employees.

Plaintiff was required to share a five percent (5%) of her tips with the sushi chefs, who were non-tipped employees under the definition of the Act.

29 U.S.C. §203(m) provides for an exception to the minimum wage requirement for employees who receive tips. This mechanism, known as "tip credit," allows employers to use a portion of the employee's tip income to supplement its minimum wage obligation to the employee, as long as the employee's combined cash wage and tip income meets or exceeds the minimum wage. *Id.* The tip credit does not apply to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee. *Id.* This subsection does not prohibit the pooling of tips among employees who *customarily and regularly receive tips. Id.* (emphasis added).

In evaluating whether an employee qualifies as a tip employee under the Act, one of the most significant factors is the employee's level of customer interaction. *Roussell v. Brinker Intern., Inc.*, 2008 WL 2714079 at *7. In addition, another significant factor is the tipping practices of the defendant because only employees who customarily and regularly receive tips

- 7 -

can participate in mandatory tip pools. *Wajcman v. Investment Corporation of Palm Beach*, 2009 WL 465071 at *3-4 (S.D. Fla. Feb 23, 2009).

Should the tip-credit employee have been required by the employer to pool his tips with a non-customarily and regularly tipped employee, the employer then maintained an invalid tip-pool; the result of which denies the employer the permission to claim a tip-credit for the employee, and entitled the employee to minimum wage for all hours worked for the employer where the tip-pool was utilized. *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994).

The court in *Roussell*, analyzing whether QAs were eligible to participate in a mandatory tip pool, noted that pursuant to the Department of Labor Field Operations Handbook, persons employed as janitors, dishwashers, chefs or cooks, and laundry room attendants, were not eligible to participate while waiters, bellhops, counter personnel who serve customers, and busboys were. *Id.* at *6.

Similarly, in *Louie v. McCormick*, 460 F.Supp. 1153 (C.D. Cal. 2006), the court held that bartenders who do not interact with customers were not "tipped employees" for the purposes of §203(m). *Id.* at 1159. In reaching its decision, the court compared the bartenders to kitchen staff who do not provide direct customer service and do not contribute to the service of the patron. *Id.* Likewise, in *Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1998), the court held that salad preparers who had no interaction with customers and performed only food preparation duties were not eligible to participate in a tip pool. *Id.* at 548.

Further, in *Kilgore v. Outback Steakhouse of Florida*, 160 F.3d 294 (6th Cir. 1998), the court found that hosts were not "tipped employees" as defined in 29 U.S.C. §203(t) because they were not "engaged in an occupation in which he customarily and regularly received more than

- 8 -

$30 a month in tips." *Id.* at 297. Therefore, the court held that Outback could not use the tip credit provisions of §203(m) to include tips in their minimum wage calculations. *Id.*

The sushi-chefs working for defendant performed only food preparation duties and have very limited customer interaction, if at all, just like the salad preparers in *Myers*. The sushi chefs do not receive tips directly from customers (Defendant's Exhibit 4, p. 39:20-24, 40:8-10; Plaintiff's Exhibit A,¶10, Plaintiff's Exhibit B, ¶4), they do not have a tip jar for clients to leave tips (Plaintiff's Exhibit A, ¶11; Plaintiff's Exhibit B, ¶4), they do not have a procedure set up to report their tips (Plaintiff's Exhibit A, ¶12), they do not take orders from clients (Defendant's Exhibit 4, p. 40:8-10), and they do not deliver food directly to the clients using instead a server or a food runner for that purpose. (Plaintiff's Exhibit A, ¶13). Based on the foregoing, there is a question of material fact in the instant case as to whether sushi-chefs are eligible to participate in a mandatory tip pool. Construing all facts in favor of Plaintiff as the opponent of a motion for summary judgment, a reasonable jury could find that sushi-chefs had only minimal direct interaction with customers and did not receive more than $30 per month in tips directly from customer, and hence were not eligible to participate in a tip pool. Therefore, Defendant's motion for summary judgment as to this issue should be denied.

### 3. There is a Question of Material Fact as to Whether Defendant's Deductions for Credit Card Processing is Valid.

Plaintiff agrees that, as a general rule, an employer may subtract a sum from an employee's charged gratuity, which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering its §203(m) partial set-off against minimum wages. *Meyers v. Copper Cellar Corp.*, 192 F.3d at 553-54. However, this case is different to the extent that here Defendant is directly refunded the credit card charge by the credit card company and

- 9 -

Defendant keeps that sum and at no time gives back any portion of the refund to the servers. (Plaintiff's Exhibit B, ¶2).

In deciding cases relating to credit card tip withholdings, courts have reasoned that the deductions are valid as long as the amounts collected from its employees, over a definable time period, *have reasonably reimbursed the employer for no more than its total expenditures associated with tip collections. Myers v. Cooper Cellar Corp.*, 192 F.3d at 554 (emphasis added). Further, courts have held that an employer must prove that it has not been enriched by the total deductions from employer's tip incomes, but merely restored to the approximate financial posture it would have occupied if it had not undertaken to collect credit card tips for its employees during the relevant period. *Id.* at 555 (citing *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (1999)).

While courts have extensively addressed an employer's right to reduce the amount of credit card tips paid to employees by an amount no greater than the amount charged to the employer by the credit card company, they have never addressed the issue of whether an employer who is later reimbursed by the credit card company for the full amount of the fee is required to refund that discount to the employee.

Consequently, a question of fact remains as to whether Defendant was enriched by the undertaking of collecting credit card tips for its employees when Defendant was ultimately reimbursed the full fee by the credit card companies, and hence did not incur any charge whatsoever in cashing the tips for its employees. Therefore, in the light most favorable to the Plaintiff, there is a question of material fact that prevents summary judgment as to whether Defendant's deductions for credit card processing were valid.

### 4. Plaintiff was Terminated in Retaliation for her Complains.

Contrary to Defendant's argument, shortly after Plaintiff complained to Defendant about the illegal tip deductions, Defendant retaliated against her by terminating her for a pretextual reason.

In cases such as here, where direct evidence of employment discrimination is lacking, claims are analyzed under the McDonnell Douglas framework, which requires the plaintiff to create an inference of discrimination through her prima facie case. *Springer v. Convergys Customer Mgmt. Group*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action." *Id.* (citing *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). It the employer proffers some legitimate, non-discriminatory reason for the decision, the plaintiff must then show that the reason is merely pretextual. *Id.* To do so, Plaintiff must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's reasons for its actions that a reasonable fact finder could find them unworthy of credence. *Springer v. Convergys Customer Mgmt. Group*, 509 F.3d at 1348.

In the case at bar, the following facts may lead a reasonable jury to conclude that Defendant's alleged reason for terminating Plaintiff was merely a pretext. According to Defendant, Plaintiff abandoned her station, as well as some guests that were seated at one of her tables, without permission, two weeks prior to her termination. (Defendant's Exhibit "4" at ¶¶20, 32). However, on the day in question, Defendant's Manager Ron Garcia specifically instructed the servers, including Plaintiff, to decide who would take the table that had been

seated. (Defendant's Exhibit 2, p. 86:16-25; Defendant's Exhibit 4, p. 30:2-24, Plaintiff's Exhibit A, ¶ 21). Plaintiff and the other servers decided that Christina would be the one to take the table, since she was the only one who had tables open at that time. (Defendant's Exhibit 2, p. 87:3-23; Plaintiff's Exhibit A, ¶22). When Christina did not provide any service to the customers, Ron Garcia confronted her and Christina blamed Plaintiff for it. (Plaintiff's Exhibit A, ¶23). Instead of investigating the situation by interviewing all the servers involved, Ron Garcia accused Plaintiff of having abandoned one of her tables without giving her an opportunity to hear her side of the story. (Defendant's Exhibit 2, pp. 88:15-89:16).

Defendant claims that another reason for terminating Plaintiff was that Plaintiff received a below standard points on a "Shoppers Report." (Defendant's Exhibit 4, ¶¶21:15-22:6). This incident occurred prior to Plaintiff's last complaint to Jeremy Emerson regarding the tip deductions for the sushi chefs and credit cards, yet Defendant only brought it up on the day when Plaintiff was terminated. (*Id.*, ¶26). Contrary to Defendant's assertions, Plaintiff was never suspended as a result of either incident. (Plaintiff's Exhibit A, ¶27).

Further, just like Plaintiff, two other employees Dean Mitchell and Yasuko Mitchell, were retaliated against and terminated after they complained to Ron Garcia about the sushi chefs illegally sharing in tips and about the credit card charges. (Plaintiff's Exhibit B, ¶5).

Based on the foregoing and in the light most favorable to the Plaintiff as the opponent to the Motion for Summary Judgment, a reasonable jury may conclude that Plaintiff was retaliated against for her complaints to Defendant's managers, and that Defendant's alleged reason for terminating are weak, implausible, incoherent, or contradictory, and therefore merely pretextual. Hence, there is a question of material fact and Defendant's Motion for Summary Judgment must be denied.

## Conclusion

The Defendant has failed to meet the heavy burden required to sustain a motion for summary judgment. The Plaintiff has presented evidence, including material facts sufficient to support her claims under the FLSA. There is a factual basis for the allegations which demonstrate that there are genuine issues for trial. Drawing all inferences in favor of the Plaintiff as the opponent of the motion for summary judgment, summary judgment is inappropriate, and the Defendant's motion must be denied.

Dated this 23rd day of October, 2009.

/s/ Lawrence J. McGuinnes, Esq.
Fla. Bar No. 814611
Lawrence J. McGuinness, P.A.
1627 S.W. 37th Avenue, Suite 100
Miami, FL 33145
Tel. (305) 448-9557
Fax. (305) 448-9559
Attorneys for Plaintiff Lorna Ash

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF; and that the foregoing document is served on this 23rd day of October 2009, to all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of the notices of Electronic Filing generated by the CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Lawrence J. McGuinnes, Esq.
Fla. Bar No. 814611
Lawrence J. McGuinness, P.A.

## SERVICE LIST

Barry A. Postman, Esq.
Jana M. Leichter, Esq.
Cole, Scott & Kissane, P.A.
1645 Palm Beach Lakes Boulevard, 2nd Floor
West Palm Beach, FL 33401

Lawrence J. McGuinness, Esq.
1627 S.W. 37th Avenue, Suite 100
Miami, FL 33145

- 14 -