UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO . 09-20406-CIV-O'SULLIVAN

[CONSENT]

LORNA ASH,

     Plaintiff,

vs.

SAMBODROMO, LLC,

     Defendant.

_____/

## **ORDER**

THIS MATTER is before the Court on the Defendant's Motion for Summary

Judgment and Incorporated Memorandum of Law (DE# 53, 9/23/09). Having reviewed

the applicable filings and the law, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment

(DE# 53, 9/23/09) is **GRANTED in part and DENIED in part** for the reasons stated

herein.

## **BACKGROUND**

On February 9, 2009, the plaintiff filed her complaint against the defendant in the

Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. See

Notice of Removal (DE# 1 at 7-13,  2/18/09). The Complaint alleged a cause of action

for the recovery of unpaid minimum wages in violation of the Fair Labor Standards Act,

29 U.S.C. § 201 et seq., (hereinafter "FLSA") and a retaliation claim pursuant to Section

215(a)(3) of the FLSA. Id. The defendant removed the case to federal court on

February 18, 2009. Id.

On September, 2009, the defendant filed Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 53). The plaintiff filed her response on October 23, 2009. See Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (DE# 57, 10/23/09). The defendant filed its reply on October 30, 2009. See Defendant's Reply in Support of it Motion for Summary Judgment (DE# 58, 10/30/09).

## FACTS[1]

From 2004 through January 4, 2009, the plaintiff worked intermittently for the defendant as a hostess and restaurant server.[2] As a restaurant server the plaintiff performed side work at the beginning and/or[3] at the end of her shift. The plaintiff's side work included putting trays together, bringing down chairs, cleaning up the bar area, making sure her station was clean and equipped with silverware, trays, filled or empty ice buckets (depending on the shift) and folded napkins. The plaintiff's side work could take between ten to fifteen minutes or thirty to forty-five minutes depending on the shift and the number of staff working. The plaintiff's side work was performed while she was on the clock and paid at the reduced minimum wage. The plaintiff was not directly tipped while performing side work but some of her customers could have been seated as she was finishing up her side work.

---

[1]The facts of the case are set forth with a view toward the evidence and the factual inferences therefrom in the light most favorable to the plaintiff, the non-moving party. Key West Harbour Dev. Corp. v. Key West, 987 F.2d 723, 726 (11th Cir. 1993).

[2] During her last term of employment with the defendant, the plaintiff worked exclusively as a restaurant server.

[3] The plaintiff testified that she performed opening side work, at the beginning of her shift and closing side work, at the end of her shift. However, it is unclear whether the plaintiff would perform both opening and closing side work in a single shift.

For her work as a hostess the plaintiff was paid ten dollars an hour and at a later time she earned 12 dollars an hour. For her work as a restaurant server, the plaintiff was paid the reduced minimum wage plus tips. When customers placed tips on a credit card, the defendant would take a percentage of the tipped amount to convert the tip to cash. The plaintiff was required to share her tips with other employees, as follows: 35 percent to the busboys, ten percent to the bartenders and five percent to the sushi chefs. The sushi chefs worked behind the sushi bar in the center of the restaurant. Customers sat at the sushi bar and could interact with the sushi chefs. The sushi chefs did not take customers' food orders. Customers placed their food orders with the servers. The servers brought the food to the customers sitting at the sushi bar. The sushi chefs did not receive tips directly from customers.

The defendant negotiated the following credit card transactions fees from January 2007 through January 2009: 2.89% for American Express and an averaged rate of 1.76% for MasterCard and Visa. The average credit card transaction rate was 2.3%. Id. The defendant deducts from tips charged on American Express cards a 3% fee and from tips charged on MasterCard and Visa cards a 1.66%. Id. The average deduction for tips charged on American Express, Master Card and Visa credit cards is 2.3% Id. The defendant was reimbursed by the credit card companies for this transaction fee.

During her employment with the defendant, the plaintiff was required by the defendant to take a food and handling course and numerous food and beverage classes at SushiSamba. The food and handling course lasted approximately two hours. The food and beverage classes were approximately once every two months and lasted

between an hour to two and half hours. The plaintiff was not paid for attending the food and handling course or the food and beverage classes.

In 2005, the plaintiff complained to the manager of the restaurant about the tip pool including the sushi chefs because she had heard that the sushi chefs earned more than the hourly minimum wage. On two other occasions the plaintiff made a comment similar to "[a]re you really supposed to give this amount to the sushi bar," to the manager on staff. See Deposition of Lorna Ash (DE# 53-3 at 67, 9/23/09).[4] The last time the plaintiff made this comment was to Jeremy Emerson, one of the managers or assistant managers, between June and November 2008.

In November 2008, the plaintiff received a low score on a shopper's report.[5] The plaintiff was given a written warning for the poor shopper's report. In late November or early December, 2008, Ron Garcia, the general manager,[6] told the plaintiff and two other servers that he had sat a table and that the plaintiff and the two servers would need to decide who would serve the table. The plaintiff and one of the servers agreed that Christina, the third server, would take the table because Christina had tables open and the plaintiff was already "cashing out" for the night. Christina did not serve the table and the customers became irate. Mr. Garcia, approached the plaintiff while she was still cashing out and yelled at her for having abandoned the table. The plaintiff's last day of

---

[4] To avoid confusion, the Court will refer to the docket entry page number printed on the top right corner and not the transcript page number.

[5] A shopper's report is prepared by a third-party individual anonymously posing as a restaurant customer. These reports describe the service the "customer" received at the restaurant.

[6] Mr. Garcia has been the defendant's general manager since approximately August, 2007. See Deposition of Ron Garcia (DE# 53-5 at 3, 9/23/09).

employment[7] with the defendant was January 4, 2009.

## STANDARD OF REVIEW

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That is, "[t]he moving party bears 'the initial responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the

---

[7] There is an issue as to whether the plaintiff was terminated. The plaintiff testified at deposition that when she confronted Ron Garcia, the defendant's general manager, about her job status, he responded "I can do without you for tomorrow, so don't come back tomorrow." The plaintiff then responded "I guess I'm terminated." See Deposition of Lorna Ash (DE# 53-3 at 55, 9/23/09). Ron Garcia testified that he told the plaintiff she was terminated when she came to the restaurant and asked him if she was terminated or still employed. "She pressed the matter with me in person and, basically, I said, well, if you want a decision, then the decision is that you're terminated." See Deposition of Ron Garcia (DE# 53-5 at 11, 9/23/09).

non-moving party. <u>Batey v. Stone</u>, 24 F.3d 1330, 1333 (11th Cir. 1994).  Summary

judgment is appropriate when there is no dispute as to any material fact and only

questions of law remain. <u>Id</u>. If the record presents factual issues, the Court must deny

the motion and proceed to trial. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be

mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense

to the parties and to the Court occasioned by an unnecessary trial. <u>Celotex</u>, 477 U.S. at

322-23. Consequently, the non-moving party cannot merely rest upon his bare

assertions, conclusory allegations, surmises or conjectures. <u>Id</u>. As the Supreme Court

noted in <u>Celotex</u>:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment . . . against the party who fails to make a showing sufficient to
> establish the existence of an element essential to the party's case, and on
> which the party will bear the burden of proof at trial.  In such a situation,
> there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial.

<u>Id</u>.  at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the

non-moving party's position is insufficient. There must be evidence on which the jury

could reasonably find for the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 251 (1986).

## <u>ANALYSIS</u>

The defendant seeks summary final judgment on all claims. <u>See</u> Defendant's

Motion for Summary Judgment (DE# 53, 9/23/09). The defendant argues that it is

entitled to summary final judgment on the plaintiff's minimum wage claim because the

plaintiff was paid minimum wage for training, the inclusion of the sushi chefs in the tip

pool was legal and the deductions taken for processing tips charged to credit cards were valid. Id. at 12-13. As to the retaliation claim, the defendant argues that summary final judgment is warranted because the plaintiff was not engaged in a protected activity and cannot show a causal connection between her complaints and her termination. Id. at 13-18. The Court will address these arguments in turn.

**1.      Minimum Wage Violations**

The FLSA requires that employers pay employees a minimum hourly wage. 29 U.S.C. § 201, et seq. Employers of tipped employees[8] may consider tips as part of the tipped employees wages, but employers must pay a direct reduced minimum wage if they claim a "tip credit."[9] 29 U.S.C. § 203(m). The plaintiff maintains that the defendant is not entitled to claim a tip credit because: (1) the plaintiff performed non-tipped work including food and beverage classes at a reduced hourly rate; (2) she was required to share a percentage of her tips with non-tipped employees or employees who were performing non-tipped work and (3) the defendant took illegal tip deductions from the plaintiff in the form of credit card transaction fees. See Complaint, Notice of Filing (DE# 1 at 7-9, 2/18/09).

**a.      Side work and Food and Beverage Classes**

The plaintiff alleges that "[t]he [defendant] required that [she perform] non-tipped

---

[8] Pursuant to the FLSA, a "'[t]ipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

[9] The difference between the amount an employee must be paid under the minimum wage law and the amount directly paid to a tipped employee is commonly referred to as a "tip credit."

work, including training and wine classes, at the reduced hourly wage." See Complaint, Notice of Filing (DE# 1 at 8, 2/18/09). The defendant argues that it is entitled to summary judgment on the plaintiff's minimum wage claim as it relates to side-work and training.

### i.   Side Work

With respect to side work, the defendant argues that "[i]t is well established that the FLSA allows for the tip credit being applied to time spent on duties related to the tipped occupation, 'even though such duties are not by themselves directed toward producing tips.'" See Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 53 at 6, 9/23/09) (citing DOL Field Operations Handbook, June 30, 2000). The plaintiff does not address the defendant's claim of entitlement to summary judgment for side work. See Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (DE# 57, 10/23/09).

The Court agrees with the defendant that, if the tip credit applies, the defendant properly paid the plaintiff the reduced minimum wage for her side work.

> FLSA regulations and the [Department of Labor's Field Operations] Handbook[10] indicate that a tipped employee's duties must fall into one of three categories. The first category includes all tip producing duties. An employer may take the tip credit for any employee time that falls within the first category. If an employee's duty is not tip producing, then it must be incidental to one of the employee's tip producing duties (the second category), or it must be a duty that is unrelated to any of the employee's tip producing duties (the third category). **If the duty falls within the second category, then the employer may take the tip credit for the time the employee spent on incidental duties so long as the**

---

[10] Though not binding on the Court, the Handbook is a persuasive authority. Myers v. The Copper Cellar Corporation, 192 F.3d 546, 554 (6th Cir.1999).

8

> **incidental duties do not exceed 20 percent of the employee's overall duties.** If the employee's second category duties exceed 20 percent of the employee's overall duties, then the employer may not take the tip credit for any of the employee's time spent on second category duties. Finally, an employer may not take the tip credit for any employee time that falls within the third category because third category duties are treated as separate and distinct occupations.

Fast v. Applebee's Intern., Inc., 502 F.Supp.2d 996, 1002 (W.D. Mo. 2007) (emphasis added).

At her deposition, the plaintiff testified that as soon as she arrived at the restaurant, she would clock in and start doing side work. See Deposition of Lorna Ash, (DE# 53-3 at 41-44, 9/23/09). Thus, this is not a case where the plaintiff was required to perform uncompensated work before and after her shift. The plaintiff's side work was performed while she was on the clock and at a reduced minimum wage. The plaintiff's side work included putting trays together, bringing down chair, cleaning up the bar area, making sure her station was clean and equipped with silverware, trays, filled or empty the ice buckets (depending on the shift) and folded napkins. Id. at 44-47. The plaintiff also performed side work at the end of her shift. Id. at 46-47. The closing side work was similar to the duties she performed during opening side work. Id. The Court finds that the plaintiff's side work was incidental to her tip producing duties as a server.

The Court must next determine whether the plaintiff's non-tipped duties exceeded twenty-percent of her shift. See Fast v. Applebee's Intern., Inc., 502 F. Supp. 2d at 1002. Neither party addresses this issue. The plaintiff's side work could take between ten to fifteen minutes or thirty to forty-five minutes. See Deposition of Lorna Ash, (DE# 53-3 at 45-46, 9/23/09). The plaintiff testified that she usually worked the night shifts but towards the end of her employment she began working the day shift as

well. Id. at 43. An example of a shift the plaintiff worked was from 7:00 p.m. until 3:00 or

4:00 a.m. Assuming the plaintiff worked till 3:00 a.m., she worked an eight hour shift.

Thus, the plaintiff's pre and post-shift work should not have exceeded 1.6 hours (twenty

percent of eight hours). Assuming the plaintiff performed side work at the beginning of

her shift and at the end of her shift at the maximum time of forty-five minutes, she

would have worked, at most, 1.5 hours (forty-five minutes times two). Thus, the

plaintiff's side work did not exceed twenty percent of her shift. Accordingly, if the tip

credit applies, the defendant is permitted to pay the plaintiff the reduced minimum wage

for her side work. However, for the reasons discussed below, there is an issue of

material fact as to whether the plaintiff participated in a valid tip pool in the instant case

and, as such, the defendant is not entitled to summary final judgment on the issue of

side work. See Barcelona v. Tiffany English Pub, Inc., 597 F.2d 464, 467 (5th Cir. 1979)

(noting that unless the employer satisfies its burden of showing the applicability of the

tip credit, the employee is "entitled to the full minimum wage for every hour worked.").

## ii.    Food and Beverage Training

The defendant further argues that it is entitled to summary judgment because the

plaintiff admitted at deposition that she was paid for her training.[11] "Plaintiff by her own

admission states that while she does not specifically recall what she was paid during

training, it was not the reduced minimum wage." See Defendant's Motion for Summary

---

[11] The defendant's motion for summary judgment only discusses the plaintiff's training. See Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 53 at 7, 9/23/09). It does not address the plaintiff's allegations with respect to the uncompensated food and wine classes until its reply. See Defendant's Reply in Support of it Motion for Summary Judgment (DE# 58 at 1-2, 10/30/09).

Judgment and Incorporated Memorandum of Law (DE# 53 at 7, 9/23/09). In her

response, the plaintiff points out that the portion of the plaintiff's deposition that the

defendant relies on concerns the plaintiff's initial training and not the additional classes

the defendant required her to take. <u>See</u> Plaintiff's Response and Memorandum of Law

in Opposition to Defendant's Motion for Summary Judgment (DE# 57 at 5-6, 10/23/09).

The plaintiff cites specific pages of her deposition transcript where she testified that she

attended uncompensated beverage and food classes approximately once every two

months for one to two and a half hours. <u>Id.</u> at 6 (citing Deposition of Lorna Ash, (DE#

53-3 at 62-63, 9/23/09)). Nonetheless, the defendant persists with its argument that the

record reflects that the plaintiff was properly paid for the training classes.  <u>See</u>

Defendant's Reply in Support of it Motion for Summary Judgment (DE# 58 at 1-2,

10/30/09).

   The defendant ignores the portion of the plaintiff's deposition testimony wherein

she unequivocally testified that she was required to attend a food and handling course

and numerous food and beverage classes as part of her employment and that she was

not compensated for her time. <u>See</u> Deposition of Lorna Ash (DE# 53-3 at 62-64,

9/23/09). The plaintiff testified is as follows:

   Q.   Did you ever take wine classes at SushiSamba?

   A.   Yes, sake and wine, beverage, yes.

               *     *     *

   Q.   How many wine classes did you attend?

   A.   I don't know the exact amount. They vary.

   Q.   Was it once a month? Once a year? Every day?

11

A.     No, no, no. Let's see. I can approximate a number. Let's see.
       Maybe once every two months - - - it is just an approximation - -
       including beverage  and food.

       You do a little of both. And also we got the documentation - -
       I don't know what it is called. Give me one second - - some
       type of certificate that servers need to get for food handling
       course. There you go.

                    *       *       *

Q.     And how long was the first one, the food and handling?

A.     The food and handling might have been two hours.

**Q.     Were you paid?**

**A.     No.**

                    *       *       *

Q.     And where were the wine classes and sake classes held?

A.     At the SushiSamba location as well.

                    *       *       *

Q.     And how long were those?

A.     It varied as well depending on how many questions we had, how
       many specials, how many things. They could go for an hour to almost
       two and a half hours. It just depends.

Q.     Did you have to come in special for this meeting?

A.     Yes.

**Q.     And were you paid for this time.**

**A.     No.**

<u>See</u> Deposition of Lorna Ash (DE# 53-3 at 61-64, 9/23/09) (emphasis added). In light of

the plaintiff's sworn deposition testimony, there are genuine issues of material fact

12

precluding summary judgment for the defendant on this issue.

The defendant relies on the deposition of Ron Garcia and its payroll records.
See Defendant's Reply in Support of Its Motion for Summary Judgment (DE# 58 at 1,
10/30/09). Mr. Garcia testified that the servers are paid minimum wage during training.
See Deposition of Ron Garcia (DE# 53-5 at 4, 9/23/09).[12] This is consistent with the
plaintiff's testimony that she was paid for her training but does not address the
additional courses which the plaintiff testified the defendant did not compensate her for
attending. In any event, the fact that the defendant's payroll records and Mr. Garcia's
testimony may contradict the plaintiff's sworn deposition testimony supports the Court's
conclusion that there are genuine issues of material fact precluding summary judgment
for the defendant on this issue.

### b.    Tip Credit

The defendant bears the burden of establishing that it is entitled to claim the "tip
credit." Barcelona v. Tiffany English Pub, Inc., 597 F.2d 464, 467 (5th Cir. 1979).
Unless the employer satisfies its burden of showing the applicability of the tip credit, the
employee is "entitled to the full minimum wage for every hour worked." Id. The following
requirements must be met to satisfy the "tip credit" in Section 203(m): (1) the tip credit
must be claimed for qualified tipped employees; (2) the employees must receive proper
notice of Section 203 (m) and (3) all tips received by the employees must be retained

---

[12] On the following page, Mr. Garcia testified that he believed the servers were
paid minimum wage for attending meetings but that it was pretty rare, once a quarter,
and included things like "new menu, training, server departmental meetings." See
Deposition of Ron Garcia (DE# 53-5 at 4, 9/23/09). It is unclear whether these meetings
are distinct from the food and beverage classes described by the plaintiff.

by them. 29 U.S.C. § 203(m). Here, the plaintiff does not dispute that she received proper notice of the defendant's intent to claim a tip credit. The plaintiff argues however, that the defendant improperly required her to share her tips with the sushi chefs and improperly charged her a transaction fee for tips charged to credit cards when the defendant was directly reimbursed by the credit card companies for the transaction fee.

### i.   The Tip Pool

The FLSA does not prohibit employers from requiring tipped employees to share tips with other tipped employees through a tip pool. 29 U.S.C. § 203 (m); Kilgore v. Outback Steakhouse of Florida, Inc., 160 F. 3d 294 (6th Cir. 1998). However, "[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'" Wajcman v. Investment Corp. of Palm Beach, 620 F. Supp. 2d 1353, 1356 n. 3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203 (m)).

Only tipped employees can participate in a valid tip pool. 29 U.S.C. § 203 (m). The parties dispute whether the sushi chefs are tipped employees. See Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 53 at 8-11, 9/23/09); Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (DE# 57 at 7-9, 10/23/09). The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(t). Courts determining whether an employee is a tipped employee have focused on the amount of customer interaction. See Kilgore v. Outback Steakhouse of Florida, Inc., 160 F. 3d 294, 301 (6th

Cir. 1998) (finding that hosts were tipped employees "because they sufficiently

interacted with customers in an industry (restaurant) where undesignated tips are

common. . . . hosts are not the primary customer contact but they do more than de

minimis interaction with the customers"); Myers v. The Copper Cellar Corp., 192 F. 3d

546, 550 (6th Cir. 1999) (concluding that lower court's determination that salad

preparers were not tipped employees was not clearly erroneous where such employees

"abstained from any direct intercourse with diners, worked entirely outside the view of

restaurant patrons, and solely performed duties traditionally classified as food

preparation or kitchen support work, they cannot be validly categorized as 'tipped

employees' under section 203(m).");  Morgan v. Speakeasy, LLC, 625 F. Supp. 2d 632,

653 (N.D. Ill. 2007) (finding restaurant's senior servers were tipped employees because

they had "sufficient customer interaction" where senior servers helped serve food and

drinks to tables, greeted customers, and checked on tables during the dinner service.);

Dole v. Continental Cuisine, Inc., 751 F. Supp. 799, 800-801 (E. D. Ark. 1990)

(upholding tip pool which included a maitre d' whose duties included setting up the

dinning room, greeting and seating customers, serving the first drink to customers and

assisting servers in serving customers as needed ).

    In the instant case, there is a genuine issue of fact as to whether the sushi chefs

could participate in the tip pool. The defendant argues that the sushi chefs' participation

in the tip pool was valid because "the sushi chefs . . . have contact with the guests a[t]

the sushi bar, as it is located in the center of the dining area." See Defendant's Motion

for Summary Judgment and Incorporated Memorandum of Law (DE# 53 at 10,

9/23/09). The record shows that customers were seated at the sushi bar in front of the

sushi chefs and that the sushi chefs could interact with customers. <u>See</u> Deposition of Ron Garcia (DE# 53-5 at 12, 9/23/09). However, customers' food orders were placed through the servers and not directly with the sushi chefs. <u>Id.</u> Additionally, the sushi chefs did not serve the customers. <u>See</u> Sworn Statement of Lorna Ash (DE# 57-2 at 3, 10/23/09). The plaintiff responds that "[t]he sushi-chefs working for the defendant performed only food preparation duties and have very limited customer interaction, if at all. . . ." <u>See</u> Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (DE# 57 at 9, 10/23/09).[13] The plaintiff further notes that a reasonable jury could conclude that the sushi chefs had only minimal direct contact with the customers and did not receive more than $30 per month in tips directly from the customer. <u>Id.</u>

The defendant responds that "[i]n fact, the law holds that a restaurant employee who merely has more than a de minimus interaction with customers is a tipped employee."[14] This argument is too simplistic. Courts have focused on the amount of customer interaction in determining who is a tipped employee, but do not limit their inquiry to whether there is more than a de minimus interaction with customers. The defendant also argues that the sushi chefs provided a "show" for patrons. <u>See</u>

---

[13]   The plaintiff also points out that the sushi chefs did not have a tip jar or otherwise receive tips directly from customers. <u>See</u> Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (DE# 57 at 9, 10/23/09). The Court finds the fact that the sushi chefs did not directly receive tips from customers irrelevant as courts have found tipped employees to include hostesses and busboys who do not directly receive tips from customers. <u>See</u> <u>Kilgore</u>, 160 F. 3d at 301.

[14]   <u>See</u> Defendant's Reply in Support of it Motion for Summary Judgment (DE# 58 at 4, 10/30/09).

Defendant's Reply in Support of it Motion for Summary Judgment (DE# 58 at 4, 10/30/09). There is no record evidence supporting this statement. The record merely establishes that the sushi chefs worked at the sushi bar in the center of the restaurant, that restaurant patrons were seated in front of the bar and that the sushi chefs could interact with patrons.

Additionally, there is no record evidence that the sushi chefs received more than $30 in tips, as required by the FLSA to be considered a tipped employee. The defendant does not directly address this but merely argues that "it is patently irrelevant whether the sushi chefs receive tips directly from customers. There is no requirement that an employee participating in the tip pool receive tips directly from a customer." See Defendant's Reply in Support of it Motion for Summary Judgment (DE# 58 at 5, 10/30/09). The FLSA does refine a tipped employee as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Thus, whether the sushi chefs received more than $30 a month is tips is relevant to determining whether they were tipped employees and therefore eligible to participate in the tip pool. Based on the foregoing, genuine issues of material fact preclude summary judgment for the defendant on the issue of whether the sushi chefs could participate in the tip pool.

### ii. Credit Card Transaction Fees

The defendant argues that the deduction taken for liquidating tips charged to credit cards was legal. See Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 53 at 11-13, 9/23/09). The defendant negotiated the following credit card transactions fees from January 2007 through

17

January 2009: 2.89% for American Express and an averaged rate of 1.76% for

MasterCard and Visa. See Affidavit of Patricia Gonzales in Support of Defendant's

Motion for Summary Judgment (DE# 53-8 at 2, 9/23/09). The average credit card

transaction rate was 2.3%. Id. The defendant deducts from tips charged on American

Express cards a 3% fee and from tips charged on MasterCard and Visa cards a 1.66%.

Id. The average deduction for tips charged on American Express, Master Card and Visa

credit cards is 2.3% Id.

The plaintiff does not dispute that the defendant is entitled to take a certain

percentage from tips charged on credit cards to cover the credit card fee of converting

those tips to cash. See Plaintiff's Response and Memorandum of Law in Opposition to

Defendant's Motion for Summary Judgment (DE# 57 at 9, 10/23/09). "[I]t is clear that,

as a matter of law, an employer may subtract a sum from an employee's charged

gratuity which reasonably compensates it for its outlays sustained in clearing that tip,

without surrendering its section 203(m) partial set-off against minimum wages." Myers

v. Copper Cellar Corp., 192 F.3d 546, 553 (6th Cir. 1999). The plaintiff argues,

however, that in the instant case the defendant was reimbursed by the credit card

companies for the transaction fees incurred and did not give back any portion of the

refund to the servers. Id. at 9-10.

The plaintiff relies on the sworn statement of Dean Mitchell, a former server at

the defendant's restaurant. See Exhibit B (DE# 57-3 at 2, 10/23/09). Mr. Mitchell states

that Ron Garcia, the restaurant's general manager, "acknowledged and admitted that

the Restaurant was directly refunded the credit card charge and that that sum was kept

by the Restaurant and no part of that refund was given back to the Servers." Id.  The

18

defendant responds that Mr. Mitchell's sworn statement is insufficient to preclude summary judgment for the defendant because Mr. Mitchell has no personal knowledge of whether the defendant received a refund from the credit card companies and the statement is hearsay. See Defendant's Reply in Support of it Motion for Summary Judgment (DE# 58 at 5-7, 10/30/09).

In order for the tip credit to apply, "the employer must prove that its total deductions from employees' tip incomes did not enrich it, but instead, at most merely restored it to the approximate financial posture it would have occupied if it had not undertaken to collect credit card tips for its employees during the relevant period." Myers, 192 F.3d at 555. Thus, if the Court accepts Mr. Mitchell's sworn statement, then the defendant is not entitled to summary judgment on the credit card transaction fees because the defendant would have been enriched by charging its employees a percentage for liquidating the charged tips while receiving a reimbursement from the credit card companies for this amount. Thus, whether the defendant is entitled to summary judgment on this issue turns on the sufficiency of Mr. Mitchell's sworn statement.

Rule 56 (e) of the Federal Rules of Civil Procedure provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). The Court finds that the sworn statement of Dean Mitchell is sufficient to create a genuine issue of material fact concerning whether the defendant was reimbursed by the credit card companies for the credit card processing fees and were thereby enriched by charging tipped employees a fee for converting the tips

19

charged on credit cards to cash. Mr. Mitchell's sworn statement is based on his own first-hand knowledge of a conversation he had with Ron Garcia. Moreover, the out-of-court statement of Ron Garcia, the defendant's general manager, was made during the course and scope of his employment and is admissible as a statement of a party opponent.[15] Fed. R. Evid. 801(d)(2)(D); <u>see</u> <u>Thomas v. IBM</u>, 48 F.3d 478, 485 (10th Cir.1995) (stating in an ADEA case that if the witness is testifying to what an authorized agent of the employer said, the statement is an admission of a party opponent); <u>Kulick v. Pocono Downs Racing Ass'n</u>, 816 F.2d 895, 897 n. 3 (3rd Cir. 1987) (witness's "recitation of the statements of the general manager are admissions by a party-opponent and are therefore not hearsay under Rule 801(d)(2)"). Based on the foregoing, the Court finds that the defendant is not entitled to summary final judgment on the credit card transaction fee issue because there is a genuine issue of material fact as to whether the defendant was enriched by charging its employees a percentage for liquidating charged tips.

**2.     Retaliation Claim**

With respect to the retaliation claim, the plaintiff argues that "[s]hortly after Plaintiff complained to Defendant about illegal tip deductions, Defendant retaliated against her by terminating her for a pretextual reason." <u>See</u> Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (DE#

---

[15] Federal Rule of Evidence 801(d) defines an admission by a party opponent as not hearsay if the statement is offered against a party and the statement was made by the employer's "agent or servant concerning a matter within the scope of his agency or employment [and] made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D).

57 at 11, 10/23/09). The defendant argues that it is entitled to summary final judgment on the retaliation claim because the plaintiff was not engaged in a protected activity and the plaintiff cannot show a causal connection between her complaint and her termination. See Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 53 at 14-18, 9/23/09).

> Section 215(a)(3) of the FLSA prohibits employers from
>
> discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Where the plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Raspanti v. Four Amigos Travel, Inc., 266 Fed. Appx. 820, 822 (11th Cir. 2008). Under this framework, the plaintiff must first establish a prima facie case of retaliation. Id. "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 208-09 (10th Cir.1997)). The employer must then articulate a legitimate nonretaliatory reason for the adverse employment action. Raspanti, 266 Fed. Appx. at 822. "If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext." Id. at 1343.

21

### a.     Protected Activity

The defendant argues that it is entitled to summary final judgment on the

plaintiff's retaliation claim because the plaintiff has not shown that she engaged in a

protected activity. See Defendant's Motion for Summary Judgment and Incorporated

Memorandum of Law (DE# 53 at 14-16, 9/23/09). In Alvarado v. I.G.W.T. Delivery

Systems, Inc., 410 F. Supp. 2d 1272 (S.D. Fla. 2006), this Court granted summary

judgment for the defendants on the plaintiffs' retaliation claim because the plaintiffs

could not show they were engaged in a protected activity. In that case, the plaintiffs'

retaliation claim was based, in part, on letters signed by the plaintiffs in February 2005

"requesting, among other things, an increase in salary, reorganization of delivery routes,

the cessation of discriminatory comments on the job, and increased courtesy and

respect in company memorandums." Id. at 1278. This Court concluded that the

February 2005 letters "fail[ed] to meet the elements required for a prima facie case [of

retaliation]" because "[t]he letters themselves d[id] not appear to clearly assert rights

under the [FLSA] in that they make no specific mention of overtime pay or invoke the

FLSA." Id. at 1279.

Similarly here, the evidence shows that the plaintiff made vague statements to

the defendant's managers about sharing her tips with the sushi chefs. In 2005, the

plaintiff complained to the manager of the restaurant about the tip pool including the

sushi chefs because she had heard that the sushi chefs earned more than the hourly

minimum wage. On two other occasions the plaintiff made a comment similar to "[a]re

you really supposed to give this amount to the sushi bar," to the manager on staff. See

Deposition of Lorna Ash (DE# 53-3 at 67, 9/23/09). The last time the plaintiff made this

22

comment was to Jeremy Emerson, one of the managers or assistant managers, between June and November 2008. However, nowhere in the plaintiff's vague statements to management does the plaintiff assert her rights under the FLSA. See Alvarado, 410 F. Supp. 2d at 1279; Etienne v. Muvico Theaters, Inc., No. 01-6265-CIV, 2003 WL 21184268, * 18 (S.D. Fla. Mar. 11, 2003) (plaintiff failed to make prima facie retaliation claim under FLSA where plaintiff did not present evidence "that he threatened to report labor-law violations, or file a complaint about business practices at the theater."). Thus, the plaintiff has failed to establish that she was engaged in a protected activity and the defendant is entitled to summary final judgment on this claim.

### b.    Causation

The defendant also argues it is entitled to summary final judgment on the plaintiff's retaliation claim because the plaintiff cannot establish causation. See Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 53 at 16-18, 9/23/09). With respect to causation, the plaintiff must show that she would not have been fired but for her assertion of FLSA rights. See Wolf, 200 F.3d at 1343. "A plaintiff can satisfy this burden if she can prove a 'close temporal proximity' between the time her employer learned about her protected activity and her discharge." Raspanti, 266 Fed. Appx. at 823. The plaintiff initially complained about sharing tips with the sushi chefs in 2005. The plaintiff was terminated in January, 2009. At least three years[16] transpired between the time the plaintiff first complained about the sushi

---

[16] The plaintiff was terminated in January, 2009. It is unknown when in 2005 the plaintiff first complained to the defendant about the sushi chefs, however, assuming that the plaintiff complained to the defendant at the end of 2005, at least three years have transpired between the plaintiff's initial complaint and her termination.

chefs and the time she was terminated. Clearly, three years is too long to establish a causal connection between the plaintiff's initial complaint and her termination. See Raspanti, 266 Fed. Appx. at 823 (finding termination that took place seven months and three weeks later, "too remote . . . to establish causation based on temporal proximity."). The last time the plaintiff complained about the sushi chefs was between June and November 2008.  Assuming the plaintiff complained to the defendant on the last day of November, 2008, one month and five days transpired between her complaint and her termination. While this time frame may suggest a close temporal proximity, "[courts] begin [their] calculation on the date the employer gains 'knowledge of the protected express[.]" Raspanti, 266 Fed. Appx. at 823 (citation omitted). Here, the defendant first learned of the plaintiff's alleged protected activity in 2005.

Thus, even if the plaintiff was engaged in a protected activity, the defendant is still entitled to summary final judgment on the plaintiff's retaliation claim because the plaintiff has failed to show a causal connection between the alleged protected activity and the defendant's adverse action in terminating the plaintiff.

### c.    Pretext

Even assuming the plaintiff can establish a prima facie case for retaliation, the defendant would still be entitled to summary final judgment as a matter of law because the defendant has shown that the plaintiff was terminated for a legitimate reason and the plaintiff has failed to show that the defendant's reason is pretextual. See Alvarado, 410 F. Supp. 2d at 1279 (on summary judgment motion noting that even though a causal connection appeared to exist, "Defendants ha[d] provided a valid reason for their

termination and the Plaintiffs ha[d] not met the burden of persuasion that this proffered

reason [wa]s pretextual in nature."). The defendant has shown that the plaintiff was

terminated for a legitimate reason -- the plaintiff received a low score on a shopper's

report and later abandoned a table with seated customers. See Defendant's Motion for

Summary Judgment and Incorporated Memorandum of Law (DE# 53 at 16, 9/23/09).

The plaintiff argues that the defendant's reasons for firing her are pretextual. See

Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for

Summary Judgment (DE# 57 at 11, 10/23/09).

If the defendant proffers some legitimate, non-discriminatory basis for

terminating the plaintiff, the plaintiff must show pretext, "[t]o do so, Plaintiff must reveal

'such weaknesses, implausibilities, inconsistencies, incoherences or contradictions' in

the employer's reasons for its actions that a reasonable fact finder could find them

unworthy of credence'" Id. (citing Springer v. Convergys Customer Mgmt. Group, 509

F.3d 1344, 1348 (11th Cir. 2007)). The plaintiff argues that:

> the following facts may lead a reasonable jury to conclude that
> Defendant's alleged reason for terminating Plaintiff was merely a pretext.
> According to Defendant, Plaintiff abandoned her station, as well as some
> guests that were seated at one of her tables, without permission, two
> weeks prior to her termination. However, on the day in question,
> Defendant's Manager Ron Garcia specifically instructed the servers,
> including Plaintiff, to decide who would take the table that had been
> seated. Plaintiff and the other servers decided that Christina would be the
> one to take the table, since she was the only one who had tables open at
> that time. When Christina did not provide any service to the customers,
> Ron Garcia confronted her and Christina blamed Plaintiff for it. **Instead of
> investigating the situation by interviewing all the servers involved,
> Ron Garcia accused Plaintiff of having abandoned one of her tables
> without giving her an opportunity to hear her side of the story.**

See Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion

25

for Summary Judgment (DE# 57 at 11-12, 10/23/09) (citations to the record omitted) (emphasis added). However, "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, so long as the reason is one that might motivate a reasonable employer." Clark v. Alabama, 141 Fed. Appx. 777, 788 (11th Cir. 2005). "Indeed, '[f]ederal courts do not sit to second-guess the business judgment of employers.'" Id. (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir.1997)). In the instant case, the defendant has proffered a valid reason for terminating the plaintiff and the plaintiff has not shown pretext. Accordingly, the defendant is entitled to summary final judgment on the retaliation claim.

## CONCLUSION

Based on the foregoing, the Court finds that the defendant is entitled to summary final judgment on the plaintiff's retaliation claim because the plaintiff has not shown as a matter of law that she was engaged in a protected activity or that there was a causal connection between her complaints and her termination. Even if the plaintiff can show a prima facie case for retaliation, the defendant has provided a valid reason for the plaintiff's termination.

DONE AND ORDERED, in Chambers, at Miami, Florida this **17th** day of November, 2009.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record